2026 IL App (2d) 250208-U
No. 2-25-0208
Order filed August 10, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

REMY L. SUANE, Defendant-Appellant.

Appeal from the Circuit Court of Lake County.
Honorable George D. Strickland, Judge, Presiding.
No. 18-CF-2550

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Birkett and Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not consider an improper aggravating factor in sentencing defendant, but even if it had, the record demonstrates that any weight placed on the alleged improper factor was so minimal that it did not result in a greater sentence.

¶ 2   Defendant, Remy Suane, appeals from the trial court's order denying his motion to reconsider his sentence. On appeal, defendant argues that the trial court considered an improper aggravating factor in imposing his sentence. Defendant asks that we reverse the trial court's judgment and reduce his sentence. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4   On November 21, 2018, defendant was charged with aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2016)) and two counts of domestic battery (720 ILCS 5/12-3.05 (West

2016)).  A jury trial commenced on July 15, 2019.  Carlos Kidd testified that on Sunday, November 4, 2018, he lived with his wife, stepdaughter, and defendant.  His wife, who was a friend of defendant, had asked if defendant could move in, and defendant moved in around October.  Defendant's girlfriend, Gloria Roldan, and her two young children were also staying with them that weekend.  Kidd stated that on the evening of November 3, defendant and Roldan were both drinking alcohol and had a verbal altercation.  Around 1 a.m. on November 4, Kidd woke up to the sound of Roldan and defendant screaming at each other.  After Kidd saw Roldan throw something at defendant, defendant rushed at Roldan and began choking her.  All the children were screaming.  Kidd was unable to get defendant off Roldan.  He estimated that defendant choked Roldan for about 30 seconds.  Roldan eventually passed out, began to have a seizure, and foam was coming out of her mouth.  Defendant then rubbed Roldan's chest to revive her and, when she regained consciousness, started slamming her head into the ground.  Kidd testified that he was eventually able to defuse the situation and get Roldan and her children into his car.  Roldan called the police from Kidd's car.  While speaking with the 911 operator, Roldan began to have another seizure and convulsions.

¶ 5    Roldan did not testify at trial, as the State attempted to serve her with a subpoena but her whereabouts were unknown.

¶ 6    Defendant testified that he and Roldan spent the weekend in question together.  On the evening of November 3, they argued, drank heavily, and Roldan took three narcotic pills.  Defendant stated that he had known Roldan for 35 years and had witnessed her experience seizures more than 30 times, noting that drinking and taking pills made the seizures worse.  Before going to bed, Roldan became upset when defendant refused to give her cash.  He awoke to a sharp smack and scratches on his neck, prompting him to leave the bedroom.  Roldan followed and continued

to hit him. Defendant shoved her into a recliner, and the argument continued, with Roldan tripping and hitting him. Defendant held Roldan against a wall and, when Kidd came out of his room, Roldan had a seizure and fell to the floor, remaining unconscious for about two minutes. Upon regaining consciousness, Roldan continued to throw things at him. Kidd was ultimately able to defuse the situation.

¶ 7    Kevin Hagerty, a police officer with the Zion police department, testified that when he responded to Kidd's car, he found Roldan unresponsive and convulsing, with foam coming from her mouth. Hagerty took multiple photographs of the scene. Roldan had bruising and scratches on her neck. Defendant had red hands, a red neck, bruising and scratches on his arm, and a scratch on the left side of his chest.

¶ 8    Phone calls made by defendant to Roldan while he was incarcerated pretrial were admitted into evidence. In one call, defendant apologized to Roldan, accepted responsibility for his actions, and stated that he did not remember half of what happened because he "blacked out." He also made comments implying that he intended to harm Kidd for "snitching." Roldan stated that she was drunk and that defendant strangled her "to the point where [she] blacked out and had seizures." In another call, defendant told Roldan, "You need to call them and tell them you don't want to press charges." After learning that Roldan had Kidd's phone number, defendant told her to block the number or else she and defendant would have problems.

¶ 9    On July 17, 2019, a jury found defendant guilty of all three charges. The trial court ordered a presentence investigation (PSI) report and a psychological evaluation. On July 22, 2019, defendant sent a letter to the trial court explaining his long history of mental illness, poor physical health, and chronic pain. He asserted that, due to his mental illnesses, he could not receive

adequate services in jail to help him overcome those conditions. He requested to be assigned to a work release program or, at minimum, to be sent to a hospital to address his chronic pain issues.

¶ 10 The PSI report indicated that defendant had a long criminal history, including convictions for residential burglary (1993), possession of cannabis (2000 and 2010), forgery (2006) and burglary (2013). Defendant committed multiple parole violations following his prior offenses and he was on parole for the 2013 burglary at the time of his arrest for the present offense. In 2009, defendant pled guilty to aggravated battery against a person over 60 years of age. The police report for that offense stated that defendant entered the victim's home with a crowbar and used it to strike the victim, causing lacerations that required stitches and staples. At his initial court appearance for the present offense, before Judge Paul Novak, defendant was found in direct criminal contempt of court for misbehavior in the courtroom. While incarcerated pretrial for the present offense, defendant attempted to mail a sealed letter; when the jail refused to mail it because it was already sealed, defendant became angry. A corrections officer ordered defendant to "lock down," but defendant did not comply and stated that "he was going to be a problem." Defendant received 30 days in segregation for his behavior. The PSI report also indicated that defendant was rated as having a high risk to reoffend. Defendant had a troubled family life and joined a gang at age eight. He stopped attending school consistently in sixth grade and was diagnosed with a behavior disorder. He attended 30 days of high school and never returned. Defendant had a limited work history. In 2017, he was involved in a car accident and suffered injuries for which he needed surgery.

¶ 11 Dr. Janelle Shinhoster completed a psychological evaluation of defendant. Her written report indicated that defendant described efforts to change his life over the past 15 years, including attempts to avoid people and neighborhoods from his past. He experienced frequent behavioral

issues while in school and was assessed as having low intellectual functioning. In 2016, defendant attempted suicide because he was out of his medication and unable to obtain help. At the time of the evaluation, he was prescribed lithium, Buspar, hydroxyzine, and Remeron. While these medications curbed his urge to use drugs, he did not achieve long-term success in reducing his alcohol and cannabis use. Defendant suffered numerous traumatic events throughout his life, including witnessing people being shot to death. Dr. Shinhoster diagnosed defendant with antisocial personality disorder, post-traumatic stress disorder (PTSD), persistent depressive disorder with intermittent major depressive episodes, cannabis use disorder in early remission, alcohol use disorder in early remission, and stimulate use disorder (cocaine) in sustained remission.

¶ 12    At the sentencing hearing, the State presented no evidence. Defendant gave a statement in allocution, asking the trial court to consider his mental illness and chronic pain. He stated that he had spent the last 15 years trying to change his life, had stopped smoking crack cocaine, and was no longer affiliated with gangs. Defendant explained that he only battered Roldan because he was intoxicated, and asserted he would never harm a woman or child in his right frame of mind. He stated that, in prison, he would be unable to receive help for his mental illnesses and thus could not improve or become a changed person. Defendant also stated that no one tries to help him, and he apologized for his actions.

¶ 13    The State requested that defendant be sentenced to 10 years in prison, citing several factors: his criminal history, the injuries sustained by Roldan, the presence of children during the offense, the defendant's physical size relative to Roldan, his alcohol use while on psychiatric medications, and his continued insistence that he and Roldan were engaged in mutual combat. The defense requested a six-year sentence, based on three mitigating factors: that defendant acted under strong provocation; substantial grounds excused his conduct though not constituting a defense; and that

his criminal conduct was induced or facilitated by another. The defense also emphasized defendant's mental health issues, social history, and expressions of remorse.

¶ 14    Following argument, the trial court vacated the two domestic battery charges under the one-act, one-crime doctrine and imposed sentence only for aggravated domestic battery. Although aggravated domestic battery was a Class 2 offense, defendant was sentenced as a Class X offender due to two prior convictions of burglary and residential burglary. The trial court sentenced defendant to 15 years' imprisonment and 4 years' mandatory supervised release (MSR).

¶ 15    In explaining its ruling, the trial court found that the offense was exceptionally aggravated, emphasizing that the victim "was unresponsive" when the police arrived, "had gone into multiple seizures," and could easily have died absent intervention. The trial court stated that defendant had strangled Roldan "into unconsciousness, into a seizure." It rejected any claim of provocation and concluded that defendant showed no genuine remorse, citing his minimization of the assault, attempts to dissuade the victim from testifying, and threats against a witness. The trial court noted that defendant was held in contempt for "extreme" misbehavior in the courtroom. The trial court also found that defendant lacked credibility, noting that his detailed trial testimony contradicted his prior claims of being in a blackout.

¶ 16    In assessing sentencing factors, the trial court placed significant weight on defendant's extensive criminal history, repeated parole violations, prior violent offenses, and commission of the current offense while on parole, concluding that these demonstrated a persistent pattern of criminal conduct and a high likelihood of reoffending. Although the trial court acknowledged mitigating factors, including defendant's mental health diagnoses, substance abuse issues, and chaotic upbringing, it found that these were outweighed by evidence of antisocial personality disorder, his high-risk assessment, and continued violent and threatening behavior. Ultimately, the

trial court determined that defendant posed an ongoing danger to the public and imposed a sentence above the State's recommendation, while noting it would have imposed an even greater sentence had there been a higher recommendation. Thereafter, defense counsel requested leave to file a notice of appeal instanter, which the trial court granted.

¶ 17    On direct appeal, defendant argued that the trial court erred by sentencing him to four years' MSR, asserting that the mandatory MSR term for a Class X offender was three years. We held that four years' MSR was statutorily required and affirmed defendant's sentence. See *People v. Suane*, No. 2-19-0703 (2021) (unpublished summary order filed under Illinois Supreme Court Rule 23(c)).

¶ 18    On August 24, 2021, defendant filed a *pro se* postconviction petition under the Post-Conviction Hearing Act (725 ILCS 5/122 *et seq*. (West 2020)). The trial court advanced the petition to the second stage and appointed counsel. Counsel filed an amended postconviction petition, alleging that trial counsel was ineffective for failing to file a motion to reconsider sentence. The trial court denied the State's motion to dismiss, determined that an evidentiary hearing was unnecessary, granted defendant's petition, and ordered defense counsel to file a motion to reconsider sentence.

¶ 19    On March 18, 2025, following various continuances, defendant filed a motion to reconsider his sentence. In relevant part, the motion alleged that the trial court erred in considering, as an aggravating factor, that defendant caused Roldan's seizures, as there was no evidence supporting that conclusion. At the hearing on the motion, defendant argued that there was no evidence that Roldan's seizures were the result of his actions, and that a reasonable inference was that they were caused by an underlying medical condition. Defendant acknowledged that the State was not required to prove the seizures were caused by his actions, as they were not an element of the

offense, but asserted that some evidence of a connection should be required before the seizures could be treated as an aggravating factor in sentencing. The State argued that it was not unreasonable to infer that a deprivation of oxygen to the brain while being choked could lead to a seizure. The State further contended that other evidence supported the sentence imposed, and that the issue of causing seizures did not weigh heavily in the trial court's reasoning.

¶ 20 Following argument, the trial court stated that it had considered the arguments of counsel, the record, the PSI report, and the statutory and nonstatutory factors in aggravation and mitigation. The trial court described the offense as a vicious, unprovoked attack against a woman who was half the size of defendant. When the police arrived, Roldan was nonresponsive and had earlier been strangled to the point of unconsciousness. The trial court observed that the State was unable to request medical testing to determine whether the seizures were the result of the attack because the victim was unavailable. The trial court considered defendant's psychological and medical diagnoses as mitigating factors, but also noted his violent criminal history, including charges for home invasion and aggravated battery. Additionally, the trial court referenced phone calls from jail that were threatening to Roldan and Kidd. The trial court then addressed the issue of seizures as follows:

> "One of the things, and this brings me back to the whole thing about seizures. A reasonable inference to be gained from the evidence is that those seizures were caused by a traumatic injury which had taken place only minutes before. There is nothing in this record that suggests that she had a seizure disorder of any form. And I think that that is a stretch, to say the least. Probably not a coincidence that she had just been nonresponsive minutes before, when the police got there; and then she seizes in the squad car.

Really, that was more of a—I don't want to say a minor part, because that's serious; but the nature of the attack here is what I considered to be a relatively vicious attack. That's the part that I really more considered as far as the circumstances of the offense. And I certainly considered the fact that she was nonresponsive when the police got there. I did consider that, because I'm required to consider that. It was a vicious assault."

¶ 21 The trial court then reiterated defendant's criminal history. It noted that defendant had been held in contempt for misbehavior in the courtroom and had been disciplined in jail after attempting to send a sealed letter out of the facility. The trial court found that, in both the PSI report and his statement in allocution, defendant blamed everyone but himself for his actions. The trial court found it significant that defendant suffered from antisocial personality disorder, which contributed to a high likelihood of reoffending. The trial court concluded:

"So the defendant has a substantial prior criminal history. This is an extremely aggravated case. He showed no remorse for his conduct. He showed no recognition that at the end of the day, he is responsible for his actions. And he cannot continue to blame everybody except himself, which is basically what he did. So for those reasons, the defense motion to reconsider is denied."

Thereafter, defendant filed a timely notice of appeal.

¶ 22                                    II. ANALYSIS

¶ 23 On appeal, defendant argues that the trial court erred in denying his motion to reconsider sentence, as the denial was based on a finding that defendant caused Roldan's seizures despite the lack of any evidence to support that finding.

¶ 24 "It is well settled that the trial court has broad discretionary powers in imposing a sentence, and the trial court's sentencing decision is entitled to great deference." *People v. Stacey*, 193 Ill.

- 9 -

2d 203, 209 (2000). A trial court has wide latitude to sentence a defendant to any term within the statutory range prescribed for the offense, provided it does not consider incompetent evidence, rely on improper aggravating factors, or disregard pertinent mitigating factors. *People v. Hernandez*, 204 Ill. App. 3d 732, 740 (1990). Moreover, "a defendant has a right not to be sentenced based upon improper factors in aggravation, and a trial judge's reliance upon an improper factor in sentencing impinges upon a defendant's 'fundamental right to liberty.' " *People v. Whitney*, 297 Ill. App. 3d 965, 969 (1998) (quoting *People v. Martin*, 119 Ill. 2d 453, 458 (1988)). Although a trial court may consider nonstatutory aggravating factors when imposing sentence, it may consider only competent and reliable evidence and must not base its sentencing decision on "prejudice, speculation, and conjecture." *People v. Dempsey*, 242 Ill. App. 3d 568, 597-98 (1993).

¶ 25 Nonetheless, a trial court's reliance on an improper aggravating factor does not necessarily require remand where the weight placed on the improper factor is so insignificant that it did not result in a greater sentence. *People v. Conover*, 84 Ill. 2d 400, 405 (1981); *People v. Bourke*, 96 Ill. 2d 327, 332 (1983). "Courts of review have found the following considerations to be helpful in determining whether trial courts have afforded significant weight to improper factors such that remand would be required: (1) whether the trial court made any dismissive or emphatic comments in reciting its consideration of the improper factor; and (2) whether the sentence received was substantially less than the maximum." *People v. Dowding*, 388 Ill. App. 3d 936, 945 (2009). Additionally, if the reviewing court cannot determine how much weight the trial court placed on the improper factor, remand is required. *Bourke*, 96 Ill. 2d at 332.

¶ 26 There is a strong presumption that the trial court based its sentencing determination on proper legal reasoning. *Dowding*, 388 Ill. App. 3d at 942-43. In determining whether the trial court relied on proper aggravating and mitigating factors, a reviewing court must consider the

record as a whole rather than focusing on isolated words or statements by the trial court. *Id.* at 943. Whether a trial court relied on an improper factor in imposing sentence presents a question of law, which this court reviews *de novo*. *People v. Abdelhadi*, 2012 IL App (2d) 111053, ¶ 8.

¶ 27 In the present case, considering the record as a whole, the trial court did not rely on an improper aggravating factor. Rather, the record supports the trial court's reasonable inference that Roldan's seizures were related to the choking. A trial court may draw reasonable inferences from the evidence during sentencing. *People v. Robinsons*, 2015 IL App (1st) 130837, ¶ 92. Moreover, a trier of fact need not "disregard inferences that flow normally from the evidence before it." *People v. Jackson*, 2020 IL 124112, ¶ 70. "An inference is 'a conclusion as to the existence of a particular fact reached by considering other facts in the usual course of human reasoning.'" *People v. Steading*, 308 Ill. App. 3d 934, 940 (1999) (quoting Michael H. Graham, Cleary and Graham's Handbook of Illinois Evidence § 302.2, at 93 (7th ed. 1999)). However, "[a] reasonable inference within the purview of the law must have a chain of factual evidentiary antecedents. If an alleged inference does not have a chain of factual evidentiary antecedents, then within the purview of the law it is not a reasonable inference but is instead mere speculation." *People v. Davis*, 278 Ill. App. 3d 532, 540 (1996).

¶ 28 Here, there were sufficient factual antecedents to support the trial court's inference that the strangulation precipitated Roldan's seizures. Kidd observed defendant strangling Roldan until she lost consciousness, after which she immediately began having a seizure and foaming at the mouth. After Kidd placed Roldan in his vehicle, she suffered another seizure. Officer Hagerty likewise observed Roldan experiencing a seizure with foam coming from her mouth. In addition, Roldan was heard during a recorded telephone call telling defendant that he had strangled her "to the point

where [she] blacked out and had seizures." These facts provided a sufficient basis for the trial court's inference, as the seizures occurred shortly after the assault.

¶ 29 Although defendant testified that Roldan had suffered seizures in the past that were exacerbated by drugs and alcohol, the trial court could reasonably infer that being strangled to the point of unconsciousness also triggered the seizures she experienced immediately afterward. In denying defendant's motion to reconsider sentence, the trial court expressly stated that it was drawing a reasonable inference based on the fact that the seizures followed a traumatic injury that had occurred "only minutes before." Although the trial court also remarked that there was no evidence Roldan had a seizure disorder, defendant's trial testimony to the contrary does not alter our analysis. The existence of prior seizures did not preclude the trial court from reasonably inferring that the strangulation precipitated the specific seizures at issue. Additionally, the trial court expressly found defendant's trial testimony not credible and was free to reject his self-serving testimony concerning Roldan's prior history of seizures. Accordingly, the trial court's inference was supported by the evidence rather than speculation, and it did not rely on an improper aggravating factor in imposing sentence.

¶ 30 Nonetheless, even if were to hold that the trial court improperly inferred that the seizures were related to the strangulation, we would not remand for resentencing because the record demonstrates that the weight placed on the alleged improper aggravating factor was not so significant as to result in a greater sentence. See *Conover*, 84 Ill. 2d at 405. Viewing the record as a whole, the trial court clearly emphasized the viciousness of the attack; the fact that defendant was twice the size of Roldan; defendant's extensive criminal history, including a home invasion charge that was reduced to an aggravated battery of senior citizen and repeated parole violations; the threatening statements defendant made during jail house phone calls; his assessment as

presenting a high risk of reoffending; his lack of remorse and tendency to blame others; his aggressive behavior in jail following his attempt to mail a sealed letter; and his inability to control himself in court, which resulted in a finding of contempt. Importantly, when ruling on defendant's motion to reconsider sentence, the trial court expressly stated that it relied less on the occurrence of the seizures as an aggravating factor and more on the viciousness of the attack. The record therefore demonstrates that the weight placed on the allegedly improper factor did not result in a greater sentence.

¶ 31    Defendant argues that the trial court's repeated references to Roldan's seizures demonstrate that they formed the basis for imposing a 15-year sentence rather than the 10-year sentence recommended by the State. We disagree. During the original sentencing hearing, the trial court referred to the victim's seizures only twice in its seven-page oral ruling. In its ruling on defendant's motion to reconsider sentence, the trial court again stated that it was reasonable to infer that the seizures resulted from the strangulation, but also expressly stated that it relied more heavily on the viciousness of the attack. Viewed in context, and considering the extensive other factors set forth by the trial court in sentencing defendant, these isolated references do not demonstrate that the victim's seizures were a significant factor in the sentencing decision. Moreover, the trial court explained that the State's 10-year recommendation actually prompted a lower sentence; had the recommendation been higher, the trial court stated it would have imposed a higher sentence. This further demonstrates that the seizures were not a significant factor in the sentencing decision.

¶ 32                                III. CONCLUSION

¶ 33    For the reasons stated, we affirm the judgment of the circuit court of Lake County.

¶ 34    Affirmed.

- 13 -